UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON MURILLO, also known as Mona Murillo,<br><br>                              Plaintiff,<br><br>              v.<br><br>D. GODFREY, et al.,<br><br>                              Defendants. | Case No. 2:18-cv-02342-JGB-JC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |

## I.    INTRODUCTION

On March 22, 2018, plaintiff Ramon Murillo, also known as Mona Murillo, who is in custody, is proceeding *pro se*, and has been granted leave to proceed without prepayment of the filing fee ("IFP"), filed a Civil Rights Complaint ("Complaint" or "Comp.") pursuant to 42 U.S.C. § 1983 ("Section 1983") against sixteen (16) defendants affiliated with the California Department of Corrections and Rehabilitation ("CDCR").[1]   The Complaint essentially alleges that plaintiff –

---

[1]Plaintiff sues Correctional Sergeants D. Godfrey and Davis, Correctional Officers (C/O) Corral, Ramirez, D. Steven(s), N. Romero, Windfield, A. Milliken, and B. Campbell, Correctional Counselor II/Appeals Coordinator J. Curiel, Appeals Coordinator/Associate Government Program Analyst K. Estrada, Correctional Lieutenants M. Allen and Verla, also known as Valenero, California Correctional Health Care Services, Medical Doctor/Deputy Medical Executive Jeffrey Carrick, and DO/Chief Medical Executive Susan Morris.

primarily while housed at the California State Prison, Los Angeles County in Lancaster, California ("CSP-LAC") – suffered violations of plaintiff's First Amendment rights to file grievances and to be free from retaliation therefor and plaintiff's Eighth Amendment rights not to be subjected to excessive force and to receive adequate medical care.  Plaintiff sues all defendants in their individual and official capacities and seeks injunctive and monetary relief.

As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

## II.    COMPLAINT[2]

The Complaint, as framed, asserts nine claims against the defendants and, construed liberally, alleges the following:

At all relevant times, plaintiff was a transgender prisoner in custody of the CDCR.  (Comp. at 16).[3]

### A.    Claim One – Defendant D. Godfrey; Claim Six – Defendant Windfield[4]

Claims One and Six allege that CSP-LAC Correctional Sergeant Godfrey and CSP-LAC Correctional Officer Windfield deprived plaintiff of her state and federal constitutional rights under the First Amendment to file a grievance and to be free from retaliation therefor, and under the Eighth Amendment to be free from the use of retaliatory force.  (Comp. at 18).

///

---

[2]Because the Complaint is not sequentially numbered, the Court has used the numbering from its official Case Management/Electronic Case Filing (CM/ECF) system.

[3]As plaintiff uses female pronouns to refer to herself in the Complaint, the Court does so as well.

[4]Although Claim One names defendant Godfrey and Claim Six names defendant Windfield, such claims appear to overlap and relate to the same incidents.  (Comp. at 9, 12, 18-19, 27-28).

On unspecified dates, plaintiff was subjected to sexual misconduct and harassment by defendant Godfrey and Windfield. (Comp. at 18). On or about October 17, 2016, plaintiff attempted to make a Prison Rape Elimination Act (PREA) report against Godfrey and Windfield. (Comp. at 18, 27).

On October 18, 2016, plaintiff made a PREA report against defendant Godfrey through plaintiff's mental health clinician. (Comp. at 18, 27). Plaintiff reported that Godfrey was sexually harassing her, engaging in sexual misconduct, and using excessive force by attempting to remove plaintiff's female style shirt from her while she was in handcuffs and while Godfrey was pushing plaintiff's face into a cage. (Comp. at 18). She also reported that defendant Windfield assisted and actively participated in defendant Godfrey's sexual harassment and misconduct. (Comp. at 27).

Godfrey thereafter retaliated against plaintiff by throwing away her other grievances, taking her property, and having other officers harass, assault and write up plaintiff for bogus rule violations. (Comp. at 18-19). At one point in mid-October 2016, while plaintiff was in administrative segregation and handcuffed, defendants Godfrey and Windfield slammed plaintiff into the door of her cell, causing her face to bleed and her arms (wrist) to get cut and swollen by the handcuffs. (Comp. at 19, 28). When returning plaintiff back to her cell, defendant Windfield smashed plaintiff against the wall and when removing her handcuffs, twisted her wrist to the point of almost breaking. (Comp. at 28).

During the foregoing or possibly another incident while plaintiff was handcuffed behind her back, defendant Windfield smashed plaintiff's face into the wall while Godfrey forcibly attempted to remove plaintiff's bra and girlshirt. (Comp. at 19). Defendant Godfrey also denied plaintiff her meals and her

///

///

///

property and threw away plaintiff's mail. (Comp. at 19). Defendants Godfrey and Windfield called plaintiff a "rat" in front of other inmates. (Comp. at 19, 28).[5]

### B. Claim Two – Defendants Corral and Ramirez

CSP-LAC Correctional Officers Corral and Ramirez assertedly violated plaintiff's state and federal constitutional rights under the First and Eighth Amendments by retaliating/using force against plaintiff for exercising her First Amendment right against their supervisor, defendant Godfrey. (Comp. at 19).

On an unspecified date, Correctional Officers Corral and Ramirez kept plaintiff in a cage for 5 hours without food, a restroom break, or water which assertedly caused plaintiff to suffer a migraine and seizure. (Comp. at 19-20). Corral and Ramirez fabricated a rule violation against plaintiff for her reporting a PREA against defendants Godfrey and Windfield. (Comp. at 20).

On more than 12 occasions, defendant Corral refused to serve plaintiff breakfast and lunch which assertedly caused plaintiff to starve and get migraines. (Comp. at 20). On more than 16 occasions, defendant Corral denied plaintiff daily shots that were part of her mental health treatment. (Comp. at 20).

On one occasion, defendant Corral – who had control of plaintiff with handcuffs – assisted defendant CSP-LAC Correctional Sergeant Davis[6] and defendant Windfield to smash plaintiff against her cell door and assisted Windfield in tripping plaintiff to the floor while defendant Davis laughed and prevented plaintiff from getting her psych meds. (Comp. at 20).

Defendant Ramirez made threats of assaulting plaintiff or of having her found hanging (dead) if she continued to file grievances. (Comp. at 20).

---

[5]Plaintiff assertedly has fully exhausted these claims against defendants Godfrey and Windfield. (Comp. at 19, 28).

[6]Davis is named as a defendant in Claim Seven and not in Claim Two, but the allegations of Claim Seven to some degree appear to overlap with those in Claim Two. (Comp. at 28-29).

1   Even though plaintiff at some point during her stay at CSP-LAC had

2   attempted to file grievances that were being ripped or thrown away in front of her

3   by unspecified individuals, unspecified defendants assertedly broke plaintiff's will

4   and spirit and chilled her from further attempting to utilize the grievance process

5   at CSP-LAC. (Comp. at 20). While housed at another institution, plaintiff

6   attempted to file grievances against the "bogus" and "retaliatory" "rule violations"

7   that assertedly have impacted her release date by adding more than 120 days of

8   prison time. (Comp. at 20).[7]

9       **C.      Claim Three – Defendants Steven(s)[8] and Romero**

10      CSP-LAC Correctional Officers D. Steven(s) and N. Romero assertedly

11  violated plaintiff's state and federal constitutional rights under the First and Eighth

12  Amendments by retaliating/using force against plaintiff for exercising her First

13  Amendment right to file a grievance. (Comp. at 21).

14      At one point in or about December 2017, defendant Romero escorted

15  plaintiff to her one-on-one consultation with a doctor. En route, defendant

16  Romero slammed plaintiff's face against the wall/concrete yard, causing her left

17  cheek to get cut and bleed and her head to hurt for more than nine days. (Comp. at

18  21). Plaintiff and other inmates started yelling and a clinician came over and hit

19  an alarm. (Comp. at 21). Sergeant Meux (not a defendant) responded to the alarm

20  and instructed defendant Steven(s) to take control of plaintiff and to escort her to a

21  holding cage so a nurse could clean and dress plaintiff's injuries. (Comp. at 21).

22      Four hours later, defendant Godfrey instructed defendant Steven(s) to return

23  plaintiff to her cell. (Comp. at 22). En route, defendant Steven(s) called plaintiff

24  _____

25      [7]Plaintiff assertedly filed grievances against defendants Ramirez and Corral relating to the

26  aforementioned claim. (Comp. at 21).

27      [8]This Court refers to such defendant as "Steven(s)" because plaintiff refers to such
    defendant as both "D. Steven" and "D. Stevens." Compare Comp. at 1, 5, 15 with Comp. at 11,

28  16, 21-23.

a "rat" and multiple other derogatory names. (Comp. at 22). When defendant Steven(s) removed plaintiff's handcuffs, he twisted plaintiff's hand to the point that plaintiff had a swollen wrist for 3 days and required ice packs. (Comp. at 22). A week later plaintiff attempted to file a PREA against defendant Romero.

While plaintiff was on a medical hold, Lieutenant Graves (not a defendant) instructed plaintiff to turn over her property to defendants Steven(s), Romero and Godfrey because plaintiff was being transferred. (Comp. at 22). On January 13, 2016, plaintiff complied, and unspecified defendants took control and possession of her property on such date. (Comp. at 22).

On January 14, 2017, plaintiff was transported to Mule Creek State Prison. (Comp. at 22). As such facility did not have bed space, plaintiff was processed through medical and placed in administrative segregation. (Comp. at 22). On January 19, 2017, plaintiff was transferred to Stockton – Department of Mental Health. (Comp. at 22). On April 17, 2017, upon plaintiff's return and release from Mule Creek State Prison administrative segregation, plaintiff learned that defendants Steven(s) and Romero had lost plaintiff's property – a loss characterized as their "last retaliatory act." (Comp. at 23).[9]

### D.    Claim Four – Defendants Curiel and Estrada

CSP-LAC Correctional Counselor II/Appeals Coordinator J. Curiel and CSP-LAC Appeals Coordinator/Associate Government Program Analyst (AGPA) K. Estrada – who works under defendant Curiel – assertedly violated plaintiff's state and federal First Amendment rights to be free from retaliatory acts by denying plaintiff her right to file a grievance. (Comp. at 23).

Plaintiff alleges that defendants Curiel and Estrada conducted a PREA/ retaliation use of force investigation against defendants Godfrey, Windfield and

---

[9]Plaintiff assertedly filed grievances against defendants Romero, Steven(s) and others relating to the foregoing acts. (Comp. at 23).

Corral even though PREA investigations are supposed to be conducted by the PREA Investigation Unit Services Officer. (Comp. at 23). Defendant Curiel's handling of such "alleged confidential" complaint assertedly led such defendant to become biased and retaliatory against plaintiff. (Comp. at 23-24). Defendants Curiel and Estrada assertedly joined forces to prevent plaintiff from filing any grievances against any officer in relation to the PREA retaliations that stemmed from plaintiff's PREA complaint against defendants Godfrey, Windfield and Corral. (Comp. at 24). Such defendants assertedly screened out/refused to scan certain of plaintiff's grievances maliciously and on "bogus" grounds to discourage plaintiff from exercising her freedom of speech/seeking redress from the courts and to retaliate against plaintiff for exercising her rights. (Comp. at 24-25).

Plaintiff's will and spirit were broken and she was chilled into silence until she was transferred to another facility.[10] (Comp. at 25).

### E.    Claim Five – Defendant Verla, also known as Valenero

CSP-LAC Correctional Lieutenant Verla, also known as Valenero ("Verla") assertedly violated plaintiff's state and federal constitutional rights under the First and Eighth Amendments by retaliating against/punishing plaintiff for exercising her First Amendment right to file a grievance. (Comp. at 25).

On or about November 30, 2016 at about 8:30 p.m., defendant Verla – assertedly to intimidate, scare and silence plaintiff – had two officers escort plaintiff from her cell to the administrative segregation EOP Center where such defendant, six other officers and the two escorting officers were present. (Comp. at 26). Defendant Verla stated that he had been ordered to address plaintiff's letters about the continued retaliation asserted in plaintiff's PREA complaint. (Comp. at 26). Even though the substance of such complaint was supposed to be

---

[10]Plaintiff assertedly filed grievances against defendants Curiel and Estrada relating to the aforementioned claim. (Comp. at 25).

"confidential" and not exposed to other staff/officers, defendant Verla named all of the allegedly abusing officers and gave a detailed account of the substance of the complaint. (Comp. at 26). Defendant Verla accused plaintiff of being a liar, called her another derogatory name, and indicated that now that all staff knew of plaintiff's complaint, she should keep her mouth shut before she was found dead in her cell. (Comp. at 26). The light in the room was then turned off and all of the officers pointed flash lights on plaintiff and told her to stop snitching on them. (Comp. at 26). After plaintiff was returned to her cell, she cried, started to suffer nightmares, and cut herself fearing the threats would come true. (Comp. at 26).

The next day, plaintiff spoke to prison psychologists and other prison officials about the foregoing acts and was assured that the defendants would not harm her. (Comp. at 27). Even so, defendant Verla and other defendants continued to retaliate against plaintiff chilling her into silence. (Comp. at 27). Two psychologists advised plaintiff not to file a grievance for her own safety. (Comp. at 27).

## F.    Claim Seven – Defendant Davis

CSP-LAC Correctional Sergeant Davis assertedly violated plaintiff's state and federal constitutional rights under the First and Eighth Amendments by retaliating against and punishing plaintiff for exercising her First Amendment right to freedom of speech. (Comp. at 28).

On or about November 27, 2016, plaintiff attempted to get a "psy-shot" for her mood and depression which she had been ordered by a doctor to receive three times a day. (Comp. at 28). Defendant Davis ordered defendants Windfield and Corral to "join the fun (party)." (Comp. at 28). When plaintiff was being returned to her cell in handcuffs, defendants Davis and Windfield smashed her face and body into a concrete wall, making plaintiff's nose bleed and causing her to have a migraine for several days. (Comp. at 29). When plaintiff's "cellie" yelled out that defendants Windfield and Corral could not be next to plaintiff due to the PREA

investigation, defendant Davis stated "'Shut up Rat' or you will be next." (Comp. at 29). Defendant Windfield twisted plaintiff's wrist and cut her by digging his nail into plaintiff. (Comp. at 29). Plaintiff yelled for help and multiple other inmates started yelling for them to stop. (Comp. at 29). Defendant Davis told defendant Windfield to leave. (Comp. at 29). As plaintiff told defendant Davis that she wanted to do a PREA retaliation report, defendant Windfield smacked plaintiff's rear end, and told plaintiff to complain about that. (Comp. at 29). Defendant Davis laughed and kept plaintiff smashed on the wall, assertedly denying plaintiff medical care for her busted bleeding nose. (Comp. at 29).

Defendant Davis also assertedly prevented plaintiff from exercising her freedom of speech by denying her the right to file a grievance and a PREA retaliation report, failing to report her request, and throwing her complaints. (Comp. at 29). Defendant Davis assertedly encouraged those he supervised to retaliate against plaintiff, encouraged the use of force against her, and refused her food as retaliatory punishment.[11]

## G.    Claim Eight – Defendants California Correctional Health Care Services, Susan Morris and Jeffrey Carrick

California Correctional Health Care Services (CCHCS), DO Chief Medical Executive Susan Morris and Medical Doctor/Deputy Medical Executive Jeffrey Carrick assertedly violated plaintiff's state and federal constitutional rights under the Eighth Amendment by depriving her of medical care/treatment. (Comp. at 30).

"Defendant's" guidelines for sex reassignment surgery assertedly authorize, among other procedures, an orchiectomy (testicle removal) and hair removal (at a surgical site). (Comp. at 30, 31). Since 2015, when plaintiff was housed at Kern Valley State Prison, plaintiff has been filing grievances and requesting sexual reassignment surgery. (Comp. at 30). More specifically, on November 2, 2015,

---

[11]Plaintiff assertedly has exhausted this claim. (Comp. at 29).

plaintiff requested (1) reassignment surgery alternative removal of testicles; and (2) electrolysis. (Comp. at 30). Having received no reply to the foregoing request, plaintiff filed a new request after being transferred to CSP-LAC, again seeking an orchiectomy and electrolysis for facial hair removal. (Comp. at 30, 31).

On November 28, 2016, "defendants" issued a memorandum authored by defendant Carrick denying plaintiff the requested medical treatment, stating that current treatments for gender dysphoria provided to plaintiff provided significant relief that was adequate and sufficient for her condition. (Comp. at 31). "Defendants" did not so notify plaintiff until June 20, 2017. Plaintiff explained (to someone unspecified) that the facial hair was torture and that the medication she was being given was not working and was "heavy on her liver and kidney." (Comp. at 31). "Defendant[s]" assertedly have a blanket policy to deny all transgender inmates the "SRS [sex reassignment surgery] treatment" absent a court order which assertedly amounts to a denial of medical care and treatment.[12] (Comp. at 31).

### H.     Claim Nine – Defendants M. Allen, A. Milliken and B. Campbell[13]

Claim Nine alleges that three prison officials at Mule Creek State Prison – Correctional Lieutenant M. Allen and CSP-LAC Correctional Officers A. Milliken and B. Campbell – deprived plaintiff of her state and federal constitutional rights under the First Amendment to file a grievance and to be free from retaliation therefor, and under the Eighth Amendment to be free from the use of retaliatory force. (Comp. at 32).

Allen, Milliken and Campbell assertedly knew plaintiff from 2013 and remembered her staff complaints. (Comp. at 32). As noted above, plaintiff was

---

[12]Plaintiff assertedly has exhausted this claim. (Comp. at 31).

[13]Although Campbell is identified as a defendant in Claim Nine, Campbell is not otherwise identified as a defendant. Compare Comp. at 1, 4-8, 16-17 with Comp. at 13, 32.

transferred to Mule Creek State Prison while on a medical hold. (Comp. at 22, 32). Upon processing plaintiff into the facility, plaintiff was advised that administrative segregation was then her only housing option at such facility. (Comp. at 32).

Defendants Campbell and Milliken processed plaintiff and some of her property in administrative segregation. (Comp. at 32). When plaintiff refused to undress where other inmates could see her naked, defendants became disrespectful and hostile. (Comp. at 32). When plaintiff refused to turn over her ring and other girl clothing, defendants Campbell and Milliken told plaintiff that they knew she was a rat and snitched on staff at CSP-LAC, that they had had a nice conversation with CSP-LAC staff, and that defendant Godfrey sent his regards. (Comp. at 32-33). This caused plaintiff to "freak out and panic." (Comp. at 33). Plaintiff refused to turn her ring, bra, and girl undershirt over to defendants. (Comp. at 33). Defendants then called defendant Allen to administrative segregation. (Comp. at 33).

On or about January 14, 2017, defendant Allen ordered defendant Milliken to assist him in escorting plaintiff to the medical center so that a nurse could conduct a strip/cavity search at 9:40 p.m. (Comp. at 33). Plaintiff was handcuffed and her ankles were shackled. (Comp. at 33). Defendants Milliken and Allen dragged her without shoes across the yard and plaza to the medical center even though plaintiff complained that the rocks were hurting her feet and the shackles were cutting into her ankles. (Comp. at 33).

Upon arrival at the medical facility, the nurse stepped out and told defendant Allen to hold on. (Comp. at 33). Defendant Allen then lifted plaintiff's blouse and bra up and started offensively touching plaintiff's breast looking for contraband and the ring. (Comp. at 33). As plaintiff screamed for help, defendant Allen pinched and twisted plaintiff's breast and nipples. (Comp. at 33). As plaintiff struggled, defendant Milliken hit plaintiff on the side, stepped on the

shackles, and twisted the handcuffs up towards plaintiff's head, causing the handcuffs to cut into plaintiff's wrist and causing plaintiff pain. (Comp. at 33). Defendant Milliken then forced plaintiff to bend over so that defendant Allen could run his finger between plaintiff's anal cavity. (Comp. at 33). The nurse reentered the exam room when defendant Allen had plaintiff's breast in his hands. (Comp. at 34). The nurse instructed the defendants to stop but they ignored her. (Comp. at 34). Plaintiff yelled that this was a PREA violation. (Comp. at 34).

Defendants then escorted plaintiff back to administrative segregation. (Comp. at 34). Defendant Allen told plaintiff that "it was compliments of Godfrey and Windfield." (Comp. at 34). Defendants threw plaintiff into a cell. (Comp. at 34).

Defendant Campbell started to throw away some of plaintiff's medical property and bras. (Comp. at 34). Every time defendant Campbell worked administrative segregation plaintiff was not fed. (Comp. at 34).

Plaintiff thereafter tried to get medical attention for the pain in her feet and ankles, her cut and bloody wrist, and her bruised breast, but was denied medical care as unspecified medical staff and mental health clinicians said that they had been warned not to help her. (Comp. at 34).

On January 18, 2017, an Investigation Service Unit Officer came to conduct a video interview into a PREA allegation that had been reported by the nurse. The officer conducted the videotaped interview and videotaped plaintiff's ankles and breast. (Comp. at 34).

On January 19, 2017, plaintiff was transferred to the Department of Mental Health – CDCR – Stockton. (Comp. at 35). On February 22, 2017, plaintiff received a "retaliatory rule violation for filing a PREA against Defendants," even

///

///

///

though plaintiff did not initiate the investigation. (Comp. at 35). Plaintiff was found guilty of the violation. (Comp. at 35).[14]

In April 2017, plaintiff returned to Mule Creek State Prison and was again placed in administrative segregation. (Comp. at 35). Defendants Campbell and Milliken told plaintiff: "Good luck in finding your property snitch." (Comp. at 35). Plaintiff's property was lost allegedly as retaliatory punishment for plaintiff's exercise of right to freedom of speech. (Comp. at 35).[15] Plaintiff has also been physically threatened by someone unspecified that if she continues to seek the PREA investigation against defendant Allen, she would be beaten and transferred to a higher level prison where transgenders risk getting raped and beaten. (Comp. at 35).

## III. PERTINENT LAW

### A. The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is

---

[14]On or about April 24, 2017, plaintiff learned that the nurse had stopped working for the CDCR in late January 2017, after reporting defendants' behavior. (Comp. at 35).

[15]Plaintiff assertedly has exhausted this claim. (Comp. at 35).

read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing Twombly, 550 U.S. at 555).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 requirements) (emphasis added). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is

14

"plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting Iqbal, 556 U.S. at 678-79).

In general, civil rights complaints are interpreted liberally in order to give pro se plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, a pro se plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a pro se complaint is dismissed because it does not state a viable claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

15

## B.   Section 1983 Claims

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676. Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013).  A Section 1983 plaintiff must establish both causation-in-fact and proximate (i.e., legal) causation.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).  Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping conclusory allegations [regarding causation] will not suffice . . . ."  Id. (citation omitted).

An individual government official "causes" a constitutional deprivation when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).  Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional

16

deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct.  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied, 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676).

### C.    First Amendment – Right to Seek Redress/Access the Court

"Prisoners have a First Amendment right to file grievances against prison officials . . . ."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted).  A prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, but to state such a claim, a plaintiff must show that he suffered an "actual injury" as a result of a defendant's actions.  Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.  To prove an actual injury, a prisoner must show that a defendant hindered the prisoner's efforts to pursue a nonfrivolous claim concerning his conviction or conditions of confinement.  See Lewis, 518 U.S. at 354-55.  "Actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Nevada Dep't of Corrections v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting Lewis, 518 U.S. at 349), cert. denied, 566 U.S. 911 (2012).

### D.    First Amendment – Retaliation

Retaliation against a prisoner for exercising her First Amendment right to seek redress/access the court is an independent constitutional violation.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  To prevail on a First Amendment retaliation claim, an inmate must prove that (1) the plaintiff/inmate engaged in conduct that is protected under the First Amendment; (2) a prison official took "adverse action" against the inmate; (3) the inmate's protected conduct was the

"substantial or motivating factor" behind the prison official's action; (4) the official's retaliatory action "would chill or silence a person of ordinary firmness from future First Amendment activities"; and (5) the action "did not advance legitimate goals of the correctional institution" because it was either "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." Watison, 668 F.3d at 1114-15 (citations and internal quotation marks omitted); Brodheim, 584 F.3d at 1271 (addressing First Amendment retaliation claim in summary judgment context). A complaint that does not allege a "chilling effect" may still state a viable retaliation claim if it alleges that the plaintiff "suffered some other harm . . . that is more than minimal. . . ." Watison, 668 F.3d at 1114 (citations and internal quotation marks omitted).

To satisfy the causation element of a First Amendment retaliation claim, an inmate/plaintiff must demonstrate that there was a specific causal link between the defendant's alleged retaliatory conduct and the inmate's exercise of a constitutional right. See generally Hartman v. Moore, 547 U.S. 250, 259 (2006) (citations omitted); Pratt v. Rowland, 65 F.3d 802, 807-08 (9th Cir. 1995). A plaintiff may do so either with direct evidence of a defendant's retaliatory motive, or with circumstantial evidence of the defendant's knowledge of the protected conduct at issue *plus* some other evidence probative of retaliatory intent, such as "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." McCollum v. California Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted; alterations in original); see generally Watison, 668 F.3d at 1114 (direct evidence of retaliatory intent "rarely" available).

///

///

18

## E. Eighth Amendment – Excessive Force/Sexual Assault

"Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny[.]" <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Id.</u> (internal quotation marks and citation omitted). "[C]ourts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." <u>Somers v. Thurman</u>, 109 F.3d 614, 622 (9th Cir.) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)), <u>cert. denied</u>, 522 U.S. 852 (1997).

The relevant inquiry, when assessing Eighth Amendment claims, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 7; <u>see also</u> <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003) (same). It is well established that, in some circumstances, officers may restrain inmates to maintain order. <u>See</u> <u>Mendiola-Martinez v. Arpaio</u>, 836 F.3d 1239, 1254 (9th Cir. 2016) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.") (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 546 (1979) (internal quotation marks omitted)). Not every malevolent touch by a prison guard gives rise to a federal cause of action. <u>Hudson</u>, 503 U.S. at 9. De minimis uses of physical force do not rise to the level of constitutional violations. <u>Id.</u> at 9-10 ("Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind) (citations and internal quotations omitted). Mere verbal harassment or abuse is not sufficient to

state a constitutional deprivation, even when the language is vulgar and offensive. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), as amended, 135 F.3d 1318 (9th Cir. 1998).

In addition, "[s]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012). "[A] prisoner presents a viable Eighth Amendment claim [based on sexual assault] where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020). The Ninth Circuit recently summarized a few key points from the governing case law on this issue:

> First, sexual assault serves no valid penological purpose. Second, where an inmate can prove that a prison guard committed a sexual assault, we presume the guard acted maliciously and sadistically for the very purpose of causing harm, and the subjective component of the Eighth Amendment claim is satisfied. Finally, . . . an inmate need not prove that an injury resulted from sexual assault in order to maintain an excessive force claim under the Eighth Amendment. Any sexual assault is objectively "repugnant to the conscience of mankind" and therefore not *de minimis* for Eighth Amendment purposes.

Bearchild v. Cobban, 947 F.3d at 1144 (quoting Hudson, 503 U.S. at 10) (other internal citations omitted).

Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do

not extend to all forms of sexual harassment. Allegations of sexual harassment that do not involve touching have routinely been found 'not sufficiently serious' to sustain an Eighth Amendment claim. <u>Austin v. Terhune</u>, 367 F.3d 1167, 1172 (9th Cir. 2004) (upholding dismissal of claim premised on allegations that correctional officer unzipped his pants and exposed his penis to an inmate from inside control booth); <u>accord</u> <u>Somers v. Thurman</u>, 109 F.3d at 624 ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd.").

## F. Eighth Amendment – Medical Care

Prison officials can violate the Eighth Amendment's prohibition against cruel and unusual punishment if they are "deliberately indifferent" to an inmate's serious medical needs. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (citation omitted); <u>see also</u> <u>Lopez v. Smith</u>, 203 F.3d at 1131 (examples of "serious medical needs" include "a medical condition that significantly affects an individual's daily activities," and "the existence of chronic and substantial pain"; citation and internal quotations omitted).

To meet the "deliberate indifference" standard, a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. at 837. Allegations of negligence do not suffice. <u>Estelle v. Gamble</u>, 429 U.S. at 105-06; <u>Lopez v. Smith</u>, 203 F.3d at 1131. Thus, inadequate treatment due to accident, mistake, inadvertence, or even gross negligence does not amount to a

constitutional violation. <u>Estelle v. Gamble</u>, 429 U.S. at 105-06; <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." <u>Farmer v. Brennan</u>, 511 U.S. at 838.

Where a prison doctor has chosen one course of action and a plaintiff contends that the doctor should have chosen another course of action, the plaintiff "must show that the course of treatment the doctor[] chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that [the doctor] chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted); <u>see also</u> <u>Snow v. McDaniel</u>, 681 F.3d 978, 987 (9th Cir. 2012) ("[a] difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference" unless the chosen care was "medically unacceptable under the circumstances") (citation and internal quotations omitted), <u>overruled on other grounds</u>, <u>Peralta v. Dillard</u>, 744 F.3d 1076 (9th Cir. 2014) (en banc), <u>cert. denied</u>, 574 U.S. 1073 (2015); <u>see also</u> <u>Hamby v. Hammond</u>, 821 F.3d 1085, 1092 (9th Cir. 2016) (stating same). An inmate's disagreement with the nature of her treatment does not suffice to state a claim for deliberate indifference. <u>See</u> <u>Franklin v. State of Oregon, State Welfare Div.</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.") (citation omitted).

**IV.    DISCUSSION**

As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

///

///

22

**A. Rule 10**

The Complaint violates Rule 10(a) of the Federal Rules of Civil Procedure because it does not name all of the defendants in the caption. Fed. R. Civ. P. 10(a) ("Caption; Names of Parties. . . . [T]he title of the complaint must name all the parties"); see, e.g., Ferdik v. Bonzelet, 963 F.2d 1258, 1263 (9th Cir.), as amended (May 22, 1992) (affirming dismissal of action based on failure to comply with court order that complaint be amended to name all defendants in caption as required by Rule 10(a)), cert. denied, 506 U.S. 915 (1992). Here, the caption on page one of the Complaint names only five of sixteen defendants, describing the defendants as: "D. Godfrey, Corral, Ramirez, D. Steven, N. Romero, et al." (Comp. at 1). The caption on page 15 of the Complaint is likewise deficient as it omits defendant Campbell. (Comp. at 15).

Accordingly, it is appropriate to dismiss the Complaint based on the failure to comply with Rule 10(a).

**B. Rule 8**

The Complaint also violates Rule 8 of the Federal Rules of Civil Procedure. The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996); see also Cafasso, 637 F.3d at 1058 (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint); McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) (noting that under Rule 8(a) a complaint must contain "sufficient allegations to put defendants fairly on notice of the claims against them"). Plaintiff's Complaint violates Rule 8 because all of the claims confusingly combine different legal theories (based on the First and Eighth Amendments of the United States Constitution and unspecified provisions of the California Constitution), incidents and/or defendants. The First and Eighth Amendments, for example, have distinct elements (detailed above) and provide

distinct legal grounds, each requiring different types of allegations.  Conflating these different legal predicates – along with unspecified violations of the State Constitution – within the same claims makes it difficult to discern which allegations are intended to support which legal theories.  In addition, the Complaint fails to provide a clear chronology of events, making it difficult to discern how different incidents may relate to one another, and whether one or more incidents described are the same as other incidents described elsewhere.  For example, it is not clear from the Complaint whether certain descriptions of plaintiff's face being forced against a cage/wall and attempts to remove plaintiff's female clothes refer to the same or different incidents.  (Comp. at 18, 19, 20, 28, 29).

Because the Complaint fails to convey a clear impression of what allegations support which legal theories, and/or the temporal or logical relation between different allegations, it is appropriate to dismiss the Complaint for violation of Rule 8.

### C. Official Capacity Claims and Claim Against CCHCS

As noted above, plaintiff sues all defendants in their official, as well as their individual capacities – including the entity CCHCS.  As CCHCS is an entity and not an "individual," it cannot be sued in an individual capacity.  Moreover, for the reasons explained below, plaintiff fails to state a viable official capacity claim against CCHCS or any other defendant.

The Eleventh Amendment bars suits against a state or its agencies or departments for legal or equitable relief.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-71 (1989); Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999), cert. denied, 530 U.S. 1261 (2000).  The Eleventh Amendment also bars suits for damages against officers in their official capacity.  Howlett v. Rose, 496 U.S. 356, 365 (1990); Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 966-67 (9th Cir. 2010) (an official capacity suit is treated as a suit

24

against the entity); <u>Brown v. Cal. Dep't of Corr.</u>, 554 F.3d 747, 752 (9th Cir. 2009) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity.") (citation omitted).  Moreover, to the extent that plaintiff seeks injunctive relief against defendants in their official capacity, such claims also fail because plaintiff does not identify any custom, policy, or practice of the state or prison that is responsible for the conduct alleged in the Complaint.[16]  <u>See</u> <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1127 (9th Cir.) (state prison administrators sued for injunctive relief were "liable in their official capacities only if policy or custom played a part in the violation of federal law"), <u>cert. denied</u>, 534 U.S. 1066 (2001); <u>Tyson v. Ratelle</u>, 166 F.R.D. 442, 446 (C.D. Cal. 1996) ("To warrant injunctive relief under Section 1983, . . . there must be an affirmative link or a causal relationship between the constitutional deprivation and the adoption of a policy, express or implied, showing the official's authorization or approval of the conduct leading to the constitutional deprivation.") (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 371 (1976)).

Accordingly, it is appropriate to dismiss plaintiff's claim against the CCHCS and his official capacity claims against all of the defendants on this basis.

### D.    First Amendment – Right to Seek Redress/Access the Court

The Complaint fails to state a claim against any defendant in his/her individual capacity for violation of plaintiff's First Amendment right to seek redress/access the courts because plaintiff does not plausibly allege that an actual injury resulted from defendants' alleged interference with/failure to file or process plaintiff's grievances.  More specifically, plaintiff does not allege that she suffered

---

[16]The only "policy" plaintiff conclusorily references is an asserted "blanket policy" of an unspecified "Defendant[]" to "deny all transgender the SRS treatment unless court ordered." (Comp. at 31).

25

any actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.  <u>Lewis</u>, 518 U.S. at 349; <u>Nevada Dep't of Corrections</u>, 648 F.3d at 1018

Accordingly, it is appropriate to dismiss plaintiff's First Amendment right to seek redress/access the court claims against all defendants for failure to state a claim.

### E.    First Amendment – Retaliation

The Complaint likewise fails to state First Amendment individual capacity retaliation claims against at least some defendants.

In Claim Three, plaintiff alleges that defendants Romero and Steven(s) hit her, twisted her hand, called her a "rat" among other derogatory names, and lost her property during her transfer.  (Comp. at 21-23).  However, plaintiff fails to allege any facts indicating that these actions were carried out to retaliate or otherwise prevent plaintiff from filing grievances.  The conclusory assertion of "retaliation" does not suffice, nor does the mere fact that Steven(s) called her a "rat," without further allegations to link the actions to plaintiff's First Amendment conduct.  <u>See</u> <u>Gronquist v. Cunningham</u>, 747 F. App'x 532, 534 (9th Cir. 2018) (officer "calling [inmate] a 'f**king rat' although improper does not constitute an 'adverse action.'") (citing <u>Oltarzewski</u>, 830 F.2d at 139); <u>Dawes v. Walker</u>, 239 F.3d 489, 492-93 (2d Cir. 2001) (allegations that officers called plaintiff a rat and an informant do not constitute adverse actions and do not make out claims of retaliation), <u>overruled on other grounds</u>, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).

In Claim Seven, plaintiff's allegations against defendant Davis are too vague and conclusory to show a First Amendment violation.  Plaintiff alleges that Davis violated the First Amendment by denying plaintiff her "right to file a grievance and a continue[d] PREA violation," "failing to report [plaintiff's] request," "throwing her complaints," and "encourag[ing] those he supervise[d] to

retaliate against plaintiff." (Comp. at 29). Plaintiff does not allege any facts regarding this conduct, nor does she provide any allegations relating Davis's other abusive actions to a retaliatory motive.

Accordingly, it is appropriate to dismiss plaintiff's First Amendment retaliation claims against at least defendants Romero, Steven(s), and Davis for failure to state a claim.[17]

## F.    Eighth Amendment – Excessive Force

Plaintiff also fails to state Eighth Amendment excessive force claims against at least some defendants in their individual capacities.

Plaintiff fails to state an Eighth Amendment excessive force claim against defendant Ramirez, who is sued in Claim Two along with defendant Corral. Plaintiff alleges that Ramirez and Corral held plaintiff "in a cage for 5 hours without food, restroom break or water." (Comp. at 19). Due to its temporary nature, this was not a sufficiently substantial or serious deprivation to state an Eighth Amendment violation. See Gunn v. Tilton, 2011 WL 1121949, at *4 (E.D. Cal. Mar. 23, 2011) (plaintiff being detained outside, with no water for approximately six hours, or restrooms for three to four hours, did not state Eighth Amendment claim because it was "temporary and the duration was not such that it posed a threat of serious physical harm or illness"); Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (five hour deprivation of water did not rise to the level of an Eighth Amendment violation). Plaintiff otherwise alleges that Ramirez made verbal threats (Comp. at 20), which do not suffice. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987) ("[I]t trivializes the [E]ighth [A]mendment

_____

[17]Although, as noted above, plaintiff's First Amendment retaliation claims are being dismissed as against all defendants based on Rule 8 and against defendants Romero, Steven(s) and Davis for failure to state a claim, the Court does not, at this juncture, deem it appropriate to predicate the dismissal of such claims against defendants Godfrey, Windfield, Corral, Ramirez, Curiel, Estrada, Verla, Allen, Milliken, and Campbell on the failure to state a claim.

to believe a threat constitutes a constitutional wrong."); <u>Oltarzewski</u>, 830 F.2d at 139 (claims of verbal harassment or abuse do not state a constitutional deprivation).

Plaintiff also fails to state an Eighth Amendment claim against defendant Steven(s). She alleges, in Claim Three, that Steven(s) called plaintiff derogatory names and twisted plaintiff's hand while removing handcuffs. (Comp. at 22). This does not rise beyond a mere "*de minimis* use[] of force," which is not actionable under the Eighth Amendment. <u>See</u> <u>Moore v. Machado</u>, 2009 WL 4051082, at *5 (N.D. Cal. Nov. 20, 2009) (inmate's allegation that handcuffs were too tight and that the officer twisted the inmate's arm was "a *de minimis* use of physical force, and the Eighth Amendment does not protect against it") (citing <u>Hudson</u>, 503 U.S. at 9-10).

Plaintiff's Eighth Amendment claims against defendants Verla and Campbell, in Claims Five and Nine, respectively, likewise fail because they amount to no more than verbal threats and property loss. (Comp. at 25-27, 34-35).

Accordingly, it is appropriate to dismiss plaintiff's Eighth Amendment claims against at least defendants Ramirez, Steven(s), Verla, and Campbell for failure to state a claim.[18]

## G.    Eighth Amendment – Medical Care

The Complaint also fails to state an Eighth Amendment individual capacity claim against defendants Morris and Carrick in their individual capacities for denial of medical treatment (Claim Eight). Plaintiff alleges that she has filed requests for "sexual reassignment surgery," "reassignment surgery alternative

---

[18]Although, as noted above, plaintiff's Eighth Amendment excessive force claims are being dismissed as against all defendants based on Rule 8 and against defendants Ramirez, Steven(s), Verla and Campbell for failure to state a claim, the Court does not, at this juncture, deem it appropriate to predicate the dismissal of such claims against defendants Godfrey, Windfield, Corral, Romero, Davis, Allen and Milliken on the failure to state a claim.

removal of testicles," and "electrolysis for facial hair removal." (Comp. at 30-31). The Court is aware that the Ninth Circuit recently held that "where . . . the record shows that the medically necessary treatment for a prisoner's gender dysphoria is gender confirmation surgery, and responsible prison officials deny such treatment with full awareness of the prisoner's suffering, those officials violate the Eighth Amendment's prohibition on cruel and unusual punishment." Edmo v. Corizon, Inc., 935 F.3d 757, 803 (9th Cir. 2019). Here, however, plaintiff does not allege facts indicating that the requested procedures are "medically necessary." Instead, she alleges that she complained that her "facial hair was torture" and "the spironolactone 100mg" (presumably for hormone therapy) "was not working and heavy on her liver and kidney." (Comp. at 31). She also alleges that her "psy-doctor" in 2016 submitted a note "stating that plaintiff should be allowed to shave daily as it [a]ffected her mental state not to and increase[d] her cutting." (Comp. at 31).

Because plaintiff's allegations fail to show that the requested procedures were "medically unacceptable under the circumstances," rather than a mere difference of medical opinion, see Snow, 681 F.3d at 987, it is appropriate to dismiss plaintiff's Eighth Amendment denial of medical care claim against defendants Morris and Carrick for failure to state a claim.

## H. Improper Joinder of Claims

Although not a basis for dismissal, the Court notes that the Complaint improperly joins unrelated claims in a single action. See Fed. R. Civ. P. 20(a)(2) (plaintiff permitted to join multiple defendants in a single action where right to relief against the defendants "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action"). For example, Claim Eight, regarding plaintiff's right to medical treatment, has no apparent relation to the incidents alleged in the other claims. Nor does it share any defendants or common questions

of law or fact.  Plaintiff is advised that any amended pleading should comply with the Federal Rules of Civil Procedure by including only related claims.  See id.; see also Fed. R. Civ. P. 21 (Misjoinder of parties not a ground for dismissing action, but court may, *sua sponte*, and on just terms, "add or drop a party" at any time).

**V.    ORDERS**[19]

In light of the foregoing, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within fourteen (14) days of the date of this Order, plaintiff must do one of the following:

1.    File a First Amended Complaint which cures the pleading defects set forth herein;[20] or

2.    Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

///

///

---

[19]The Court's orders herein constitute non-dispositive rulings on pretrial matters.  To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days.  See Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[20]The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a First Amended Complaint if she elects to proceed in that fashion.  Any First Amended Complaint must: (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each defendant did and how that individual's conduct specifically violated plaintiff's civil rights; and (g) not add defendants or claims that are not reasonably related to the claims asserted in the original Complaint without prior leave of Court.

30

3.    File a Notice of Intent to Stand on Complaint, indicating plaintiff's intent to stand on the original Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that plaintiff's failure timely to file a First Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Complaint may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED:  March 9, 2020

_____ /s/ _____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE